## ADMINISTRATION OF PROPERTY IN THE NAME OF A BRANCH OF A FRATERNAL ORGANIZATION.

Court of Appeals for Hamilton County.

DELLA PARKS V. THE GRAND FOUNTAIN OF THE UNITED ORDER OF TRUE REFORMERS AND THE REFORMERS MERCAN- TILE & INDUSTRIAL ASSOCIATION.

Decided, April 24, 1916.

*Mutual Benefit Societies—Property in the Name of a Branch Organiza- tion Subject to Claims of Beneficiaries of the Parent Society, When.*

Where a subsidiary body is officered by the same officers as those who control and dominate the parent body, and has as its purpose the rendering of assistance to the parent body, and its purpose and character has always been so understood by all the members of the parent body and has always been so declared, and those who became members of the parent organization did so in the belief that it embraced this subsidiary property in the hands of a re- ceiver and standing in the name of the subsidiary will be ad- ministered for the benefit of the parent body.

*William C. Lambert,* for plaintiff.
*Chas. Broadwell* and *Johnson & Levy,* contra.

JONES (E. H.), P. J.

The petition in this case avers that the Grand Fountain of the United Order of True Reformers is a corporation under the laws of Virginia, and that the other defendant, the Reformers Mercantile & Industrial Association, is also a corporation under the laws of Virginia and is an allied or subsidiary corporation, being under the control and management of the Grand Foun- tain of the United Order of True Reformers; that the latter is a fraternal beneficial association of colored people with members all over the United States, divided into divisions and lodges, and that in consideration of dues paid by its members at regular specified times it pays to them sick benefits and also issues death certificates providing for the payment of a stipulated sum upon the death of the member named therein.

Plaintiff, Della Parks, being the beneficiary named in one of these certificates issued to Rose Lee Parks, deceased, recovered a judgment before a justice of the peace against the Grand Fountain upon said certificate for the sum of $139 and costs. She says that said judgment is in full force and effect and is unpaid. She also says that within the jurisdiction of this court alone there are, according to her information, a number of persons who are in the same situation as herself and who are beneficiaries named in certificates held by deceased members of the order; that some of these have recovered judgments on their claims, all of which are unsatisfied and unpaid. She further avers that the said beneficial society is in the hands of receivers; that its affairs are in a tangled condition and that some of its principal officers are under indictment on the charge of misapplying the funds of said defendant in the state of Virginia; that on February 20, 1902, the Grand Fountain purchased certain real estate in the city of Cincinnati; that the title of said real estate was fraudulently put in the name of the defendant, the Reformers Mercantile & Industrial Association, and that in fact said real estate always was and now is the property of the Grand Fountain. Plaintiff, Della Parks, prays that said real estate be subjected to the payment of said judgment; that it be sold if necessary and out of the proceeds the judgment of the plaintiff be paid, and for such other and further relief as she may be entitled to.

The case is here on appeal from the judgment of the common pleas court, and was heard by this court on the oral evidence and numerous exhibits, and was submitted on arguments and briefs.

We think the evidence fully supports the claim of the plaintiff set out in her petition that the Grand Fountain of the United Order of True Reformers is insolvent.

In support of the claim that the property described in the petition, located in Cincinnati, was owned by the Grand Fountain of the United Order of True Reformers, and not by the defendant, the Reformers Mercantile & Industrial Association, a great number of books and records of the Grand Fountain were offered in evidence. These books consist of the minutes of

the annual session of the Grand Fountain of the United Order
of True Reformers, beginning with the year 1902, down to the
year 1908; also, a history of twenty-five years of the order,
guidebooks, pamphlets and other literature disseminated by the
officers of the Grand Fountain. Throughout these books and
reports it appears that the officers of the Grand Fountain were
also the officers of the Reformers Mercantile & Industrial Asso-
ciation; that the Reformers Mercantile & Industrial Association
was promoted and organized by the officers and members of the
Grand Fountain; that it was controlled and dominated entirely
by the members and officers of the Grand Fountain and was ad-
vertised in their literature as a subsidiary organization of the
Grand Fountain.

It further appears from these records that the officers of the
Grand Fountain, also the officers of the Reformers Mercantile
& Industrial Association, including the Grand Worthy Master,
as president of the organization, made repeated statements to
the local members of the Grand Fountain of Cincinnati that the
property involved in the controversy in this cause was to con-
stitute a home for them and all the order of the Grand Foun-
tain, and that these representations were made as inducements
to secure colored people in this city to become members of the
Grand Fountain.

Without undertaking to set out the numerous statements and
the evidence in this case, we have come to the conclusion that
the property located in Cincinnati, the title of which appears to
be in the name of the Reformers Mercantile & Industrial Asso-
ciation, is really held in trust by that organization for the use
and benefit of the Grand Fountain and its members; that this
subsidiary organization, the Reformers Mercantile & Industrial
Assocation, was incorporated and organized solely for the pur-
pose of aiding and assisting the members of the Grand Fountain
and to facilitate the transaction of its business and to divide
up the work which was to be accomplished by the parent body.
In the numerous pamphlets put out by the parent body and in
the minutes of the annual session it is shown that the parent
organization consists of eight subdivisions or branches, the first

being subordinate Fountains, and other subordinate branches being the savings bank, the real estate department and lastly the Reformers Mercantile & Industrial Association.

It further appears from the evidence in the case that other property which belonged to the parent body was bought and the title placed in the name of the subsidiary organization. For example, in 1903, the worthy grand master of this order, who was the chief executive and controlling spirit of the organization, reported that he had purchased fifty-four acres of land on the James river in Virginia, and that he had put the title of the property in the Reformers Mercantile & Industrial Association, and that the property belonged to the parent body of the Grand Fountain. The same year and in the same report he gave a detailed statement of how he had purchased the Cincinnati property, and, among other things, stated that there had been donated by the votes of the directors of the Grand Fountain $40,000 to put up a building in St. Louis, but that he had purchased the property in St. Louis for $22,500, and had taken the balance left from the $40,000 and purchased another piece of property in Louisville for $4,600, and had purchased the property in Cincinnati for $7,000.

We think the evidence is overwhelming tending to show that notwithstanding the fact that the title was taken in the name of the Reformers Mercantile & Industrial Association, it was nevertheless purchased for the parent body and it was so understood by all of the members of the organization. Such being the fact, we conclude that the members of the organization of the Grand Fountain who are residents of this city have a right to look to this property in Cincinnati to secure the payment of the claims which they have against this organization. The mere fact that the Reformers Mercantile & Industrial Association is a separate organization from that of the Grand Fountain will not prevent the application of equitable principles to the facts in this case. It has been held repeatedly by the courts that a corporation is a legal entity apart from the natural persons who compose it, but that this legal entity is a mere fiction introduced for convenience in the transaction of its business and of those who do business

with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, the fiction may be disregarded. *State* v. *Standard Oil Co.*, 49 O. S., 137; *Brundred* v. *Rice*, 49 O. S., 640.

In *Bank* v. *Trebein*, 59 O. S., 316, on page 326, the Supreme Court, in speaking of the manner in which courts would look at the corporate entity of a corporation, says:

"The fiction by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application as frequently to induce the belief that it must be universal, and be, in all cases, adhered to, although the greatest frauds may thereby be perpetrated under the fictions as a shield. But modern cases, sustained by the best text-writers, confine the fiction to the purposes for which it was adopted—convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transaction."

It can not be doubted, from a perusal of the evidence in this case, that this subsidiary organization, the Reformers Mercantile & Industrial Association, was organized purely and simply as an aid to the parent body, officered by the same officers as those controlling and dominating the parent body and for the purpose of assisting the members of the parent body. It was considered by all of the members of the organization and all of its officers, and so stated time and again in their utterances before the delegates in their annual session, that these organizations were all part and parcel of one Grand Fountain of the United Order of True Reformers. Those who became members of this organization in Cincinnati did so upon the belief and understanding that this great organization embraced all the subsidiary organizations and branches known as subsidiary branches. In truth and in substance the real company was the Grand Fountain of the United Order of True Reformers and it dominated and controlled all the other branches and organizations.

In view of this conclusion we are of the opinion that a decree should be entered in this case in accordance with the prayer

of the petition of the plaintiff, and that this property in Cincinnati, now in the hands of a receiver, should be held and administered for the benefit of the members of this Grand Fountain who are citizens and residents of Hamilton county, Ohio, who may have come in or may hereafter come in and ask to participate in the benefits which they claim in this property.

JONES (Oliver B.), J., and GORMAN, J., concur.